# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                            )
**CAROL R. DAGGS,**                         )
                                            )
    **Plaintiff,**                 )
                                            )    **Civil Action No.**
    **v.**                        )    **11-30070-FDS**
                                            )
**ANTHONY BASS and**                        )
**COMCAST OF MASSACHUSETTS II,**            )
**INC.,**                                   )
                                            )
    **Defendants.**                )
                                            )
_____

## MEMORANDUM AND ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS AND CROSS-MOTIONS FOR SUMMARY JUDGMENT

This is a case involving copyright infringement.  Plaintiff Carol R. Daggs, proceeding *pro se*, brought this action against defendants Anthony Bass and Comcast of Massachusetts II, Inc. Plaintiff alleges that defendants infringed on her copyright by recording a live musical performance by her and later broadcasting it on a public-access television channel.

Daggs contends that Bass videotaped her performance of three original songs at the "Organixsoul" musical showcase in Springfield, Massachusetts, without her permission.  The program was later broadcast on Comcast public-access television as part of the City Beat television program; Daggs contends that this broadcast occurred without her knowledge or consent.  She seeks both compensatory and statutory damages under copyright law.

Defendant Bass has filed a motion to dismiss.  Defendant Comcast and plaintiff have filed cross-motions for summary judgment.

I.    **Background**

A.    **Factual Background**

The following facts are undisputed, unless otherwise noted.

1.    **Carol Daggs's Performance**

Carol Daggs is a musical artist who sings and plays the piano under the name "Jazzage."
(Compl. ¶ 1).  She is a member of the American Society of Composers, Authors, and Publishers
("ASCAP"), and holds a copyright for all of her original songs.  (*Id.*).[1]

On October 23, 2010, Daggs performed at the Organixsoul evening showcase at the City
Place Inn and Suites in Springfield, Massachusetts.  (Compl. ¶ 1).  She performed three original
songs:  "Actions Speak Louder than Words," "Can You Dig It," and "Love Is."  (*Id.*).

Daggs contends that she was never informed that the program was going to be recorded.
(*Id.*).[2]  At the beginning of her set, she noticed a man—later identified as Tony Bass—on the far
side of the room recording the show.  (*Id.*).  Following her performance, she approached him and
introduced herself.  (*Id.*).   She identified herself as a member of ASCAP, and requested a
courtesy copy of her set of songs.  (*Id.*).  Daggs alleges that she was never informed that the set
would be broadcast on television, and that Bass never requested permission to use the recording.
(*Id.*).  Bass alleges that he informed her that he was the producer of *City Beat TV* on Comcast.

---

[1] Daggs asserts in her complaint that she holds a registered copyright in her original songs; neither
defendant appears to contest this fact.  However, she has not filed with the Court any certificates of registration for
her songs.  In her "Report on the Filing or Determination of an Action or Appeal Regarding a Copyright," she lists a
copyright registration number for "Jazzage/Actions Speak Louder than Words," and indicates that three other
copyright registration numbers are "pending in process."  (Pl. Report, ECF no. 4).

[2] Daggs also alleges that she was the opening act that night, and was not aware that the show was being
recorded prior to her performance.  (Compl. ¶ 1).  Bass contests this allegation.  He alleges that she was not the
opening act, and was well aware by the time she went on that the show was being recorded.  (Def. Answer ¶ 1).

(Mot. to Dismiss at 1). Both parties agree that he promptly sent her a DVD of the performance at no charge. (*Id.*).

On November 17, 2010, Daggs's performance aired on Channel 12, Comcast's public access television channel in Springfield, Massachusetts, as part of *City Beat TV*. (Comcast's Statement of Material Facts ("SMF") ¶ 8; Mot. to Dismiss at 1). Channel 12 is a Comcast public, educational, or governmental ("PEG") access channel. (SMF ¶ 9).

Daggs alleges that at the time, she was not aware that she would be appearing on the show. (Compl. ¶ 2). Some time later, she was informed by children in her church youth choir that they had seen her on television. (*Id.*). She then contacted both Bass and the producer of Organixsoul to complain about the unauthorized recording and broadcasting. (*Id.*).

### 2. Comcast Blanket License Agreement with ASCAP

Comcast has a blanket license agreement with ASCAP. (SMF ¶ 11). That license was in place in November 2011, when the broadcast at issue here occurred. (SMF ¶ 12). The license provides:

> ASCAP grants to Licensee and Licensee accepts, for the License Period, a non-exclusive, Through-to-the-Audience, license to perform in and as part of Licensed Programming over each of Licensee's Distribution Systems within the United States, nondramatic public performances of musical compositions now or hereafter during the term hereof in the ASCAP repertory, or as to which ASCAP has or shall have the right to grant such license during the term hereof.

(Def. Mem., Ex. 2).

"Through-to-the-Audience" is defined in the agreement as the "transmission or retransmission of simultaneous or so-called 'delayed' performances of music." (Def. Mem., Ex. 2). "Licensed programming" refers to Comcast's television programming, including PEG programming. (*Id.*) ("Licensed Programming as used in this Agreement shall mean . . . (b)

3

programming on public, educational, and governmental . . . access channels."). "Licensee's

Distribution Systems" means all cable television distribution systems that Comcast operates.

(*Id.*).

**B.     Procedural Background**

Plaintiff filed this action on March 18, 2011.  Defendant Comcast filed an answer to the

complaint on May 4, 2011.  Defendant Bass initially failed to respond to the complaint, and an

entry of default was entered against him on May 17, 2011.  This entry of default was set aside on

August 16, 2011; that same day, defendant Bass filed an answer to the complaint.

On April 17, 2012, defendant Bass filed a motion to dismiss.  Fed. R. Civ. P. 12(b) states

that "[a] motion asserting [failure to state a claim] must be made before pleading if a responsive

pleading is allowed."  Thus, defendants' motion to dismiss is untimely because it was made after

his responsive pleading was filed.  However, Fed. R. Civ. P. 12(c) allows for judgment on the

pleading upon a motion that is made "[a]fter the pleadings are closed—but early enough not to

delay trial . . . ."  Judgment on the pleadings at this stage is both timely and would promote the

expedient resolution of this action by obviating discovery or narrowing its scope.  Accordingly,

although defendant has styled his filing as a motion to dismiss, the Court will treat the motion as

one for judgment on the pleadings under Rule 12(c).  *See Patel v. Contemporary Classics of*

*Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (holding that a motion to dismiss that is filed

after the close of pleadings should be construed as a motion for judgment on the pleadings).

On April 18, 2012, defendant Comcast moved for summary judgment.  Plaintiff cross-

moved for summary judgment on May 7.

II.     **Standard of Review**

A.      **Judgment on the Pleadings**

A Rule 12(c) motion for judgment on the pleadings "is treated much like a Rule 12(b)(6) motion to dismiss." *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008).  It differs from a Rule 12(b)(6) motion primarily because it is filed after the close of pleadings and "implicates the pleadings as a whole." *Aponte-Torres v. University of Puerto Rico*, 445 F.3d 50, 54-55 (1st Cir. 2006).  Because a Rule 12(c) motion "calls for an assessment of the merits of the case at an embryonic stage," the court must view the facts contained in the pleadings in the light most favorable to the non-moving party and draw all reasonable inferences to his or her benefit. *R.G. Financial Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006).

However, to survive a motion for judgment on the pleadings, a complaint must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556). The court will therefore grant defendants' motion for judgment on the pleadings if plaintiffs' well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief."  *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

B.      **Summary Judgment**

Summary judgment is appropriate when the pleadings, the discovery and disclosure

materials on file, and any affidavits show that "there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Essentially,

Rule 56[] mandates the entry of summary judgment 'against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial.'"  *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st

Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  In making that

determination, the Court views "the record in the light most favorable to the nonmovant, drawing

reasonable inferences in his favor."  *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).

When "a properly supported motion for summary judgment is made, the adverse party 'must set

forth specific facts showing that there is a genuine issue for trial.'"  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  The non-moving party may not

simply "rest upon mere allegation or denials of his pleading," but instead must "present

affirmative evidence."  *Id*. at 256-57.

III.    **Analysis**

Plaintiff contends that defendants' acts infringed on her copyright.  A copyright holder

has the exclusive rights of reproduction, preparation of derivative works, distribution,

performance, and display.  *See* 17 U.S.C. § 106.  Any act that is inconsistent with a copyright

holder's exclusive rights constitutes infringement.  *See Guedes v. Martinez*, 131 F. Supp. 2d 272,

276 (D.P.R. 2001).  To prevail on a claim for copyright infringement, a plaintiff must

demonstrate (1) ownership of a valid copyright and (2) copying of the elements of the work that

are original. *Johnson v. Gordon*, 409 F.3d 12, 17 (1st Cir. 2005) (*quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

A plaintiff bears the burden of establishing ownership of a valid copyright. *Johnson v. Gordon*, 409. F.3d 12, 17 (1st Cir. 2005). A plaintiff may make a prima facie case of copyright validity by submitting a certificate of a registration made before or within five years after first publication of the work. 17 U.S.C. § 410(c). Once the plaintiff establishes a presumption of validity, the burden shifts to the defendant to rebut that presumption. *See, e.g., Broadcast Music, Inc. v. Rockingham Venture Inc.*, 909 F. Supp. 38, 43 (D.N.H. 1995).

For the purposes of federal copyright law, "[c]opying is a shorthand reference to the act of infringing any of the copyright owner's five exclusive rights set forth at 17 U.S.C. § 106 . . . ." *Jalbert v. Grautski*, 554 F. Supp. 2d 57, 67 (D. Mass. 2008) (*quoting Ford Motor Co. v. Summit Motor Prods., Inc.* 930 F.2d 277, 291 (3d Cir. 1991). Pursuant to 17 U.S.C. § 106, the holder of a valid federal copyright has, among other things, the exclusive right to reproduce the copyrighted work and to perform it publicly. *See* 17 U.S.C. §106. Intent is not an element of copyright infringement. *See* 17 U.S.C. § 501.

Although she does not refer to it as such, plaintiff also makes a claim under 17 U.S.C. § 1101, known as the "Anti-Bootlegging Statute." This statute broadly prohibits unauthorized creation of and trafficking in sound recordings and music videos. It provides, in relevant part:

> (a) Unauthorized acts. Anyone who, without the consent of the performer [and performers] involved -
>
> (1) fixes the sounds or sounds and images of a live musical performance in a copy or phonorecord . . . [or]
>
> (2) transmits or otherwise communicates to the public the sounds or sounds and imagines of a live musical performance . . .

shall be subject to the remedies in sections 502 through 505, to the same extent as
an infringer of copyright.

17 U.S.C. § 1101.  Plaintiff asserts that defendant Bass recorded her live performance without

her consent, and later communicated it to the public by broadcasting it on television.

### A.        Defendant Bass's Motion for Judgment on the Pleadings

Defendant Bass asks the Court to dismiss the plaintiff's claims.  His basis for doing so is

not entirely clear.  He first asserts that her legal claims are "excessive."  He next asserts that he

did not acquire the video of her performance illegally, deceptively, or without plaintiff's

knowledge, and that plaintiff had "ample opportunities to advise the defendant . . . to stop

videotaping."  (Mot. to Dismiss at 2).  He further asserts that there is no "proof of ill-will or

intent to cause harm."  (*Id*.).  Defendant also appears assert that plaintiff has unreasonably failed

to accept settlement offers.

None of those arguments provide an adequate basis for dismissal of plaintiff's claims.

First, it is unclear what defendant means in arguing that plaintiff's legal claims are "excessive."

Based on the context of this assertion, he seems to suggest that plaintiff did not suffer any harm,

and in fact benefitted from his willingness to provide her with a free copy of the recording.  This

is not a legal basis for dismissing plaintiff's claims.  In a case alleging copyright infringement,

there is no requirement that a plaintiff plead any harm beyond the unlawful infringement itself.

This argument therefore fails.

Next, defendant alleges that he acted with good intentions.  This does not provide a legal

basis to dismiss plaintiff's claim.  To set forth a claim of copyright infringement, plaintiff does

not need to prove that defendant had improper motive or intent; intent is irrelevant to copyright

infringement, at least at the stage of liability.[3]  This argument also fails.

Defendant further alleges that plaintiff could have asked him to stop taping her performance at any time.  Although it is not phrased this way, the Court understands defendant to be contending that, by allowing him to continue recording after she observed him doing so, and by requesting a copy of the recording following her performance, plaintiff impliedly granted him permission to make and use the recording.  Implied license is a valid defense to copyright infringement; a copyright owner can make an oral grant of a nonexclusive license, or such a grant can be implied from conduct which indicates the owner's intent to allow a licensee to use the work.  *John G. Danielson, Inc. v Winchester-Conant Props., Inc.*, 322 F.3d 26, 40 (1st Cir. 2003).  However, on a motion for judgment on the pleadings, the Court must accepts all facts, and any reasonable inferences they support, in the light most favorable to the non-moving party.  Here, plaintiff has set forth a plausible allegation of copyright infringement.  She alleges that all three songs are covered by copyright.  She further alleges that defendant recorded her performance of these songs without her consent, and broadcast them on television without her knowledge or consent.  These facts, taken as true, support a claim that defendant infringed on her exclusive right to reproduce the copyrighted work and perform it publicly.  They also support a claim that he unlawfully recorded her live performance without her consent.  At this stage, defendant's implied license argument also fails.

Finally, defendant alleges that plaintiff has refused reasonable settlement offers.  The contents of settlement negotiations are not relevant to the legal analysis, and will not be

---

[3] Intent *is* relevant to the question of whether infringement was willful, and can be important in determining the amount of damages.

considered.

Defendant has not demonstrated any basis on which the pleadings fail to state a plausible claim for relief.  Accordingly, defendant's motion to dismiss, treated as a motion for judgment on the pleadings, will be denied.

### B.      Defendant Comcast's Motion for Summary Judgment

Defendant Comcast has moved for summary judgment.  It sets forth three bases for its motion:  first, that federal law affords Comcast immunity from any suit involving programming on a public-access channel; second, that Comcast's blanket license agreement with ASCAP provides it with immunity; and third, that Comcast committed no wrongs against the plaintiff.

### 1.      Cable Communications Act of 1984

Comcast first contends that the Cable Communications Act of 1984 ("the Cable Act") protects it from liability for copyright infringement.

The Cable Act is a federal statute that sets forth a comprehensive regulatory scheme for the cable television industry.  *Community Television of Utah, Inc. v. Wilkinson*, 611 F. Supp. 1099, 1102 (D. Utah 1985).  It ensures that the cable television medium is available to parties who are not affiliated with cable operators.  Specifically, the Cable Act provides that cable operators must set aside a limited number of channels for independent commercial, public, educational, or governmental ("PEG") programs.  47 U.S.C. § 611; *Community Television* at 1102-03.  Cable operators are expressly forbidden from editing the programs carried on these channels.  47 U.S.C. § 612.

Because cable operators cannot lawfully exercise editorial control over PEG programs, the Cable Act also shields them from any civil liability resulting from those programs.  It

provides, in relevant part:

> "Nothing in [47 U.S.C. § 521 et seq.] shall be deemed to affect the criminal or
> civil liability of cable programmers or cable operators pursuant to the Federal,
> State, or local law of libel, slander . . . or other similar laws, *except that cable*
> *operators shall not incur any such liability for any program carried on any*
> *channel designated for public, educational, governmental use . . . .*"

47 U.S.C. § 558 (emphasis added).  Courts have interpreted this language as forbidding all civil

actions against cable operators concerning the content of programs on PEG channels.  *See, e.g.,*

*Community Television* at 1103; *see also Playboy Enter., Inc. v. Public Serv. Com'n of Puerto*

*Rico*, 698 F. Supp. 401, 403 (D.P.R. 1988).

There is no genuine dispute that Comcast is a cable operator.  Cable operators are defined

under the Cable Act as entities that provide "cable service over a cable system . . . ."  47 U.S.C. §

522(5).  "Cable service" is defined as video programming and the viewer's interaction with that

programming; "cable system" is defined as the equipment used by the cable company.  *See* 47

U.S.C. § 522(6),(7).  Comcast fits this criteria.  (Def. Mem., Ex. 1 ¶ 2).

Further, there is no genuine dispute that the programming at issue in this case is PEG

programming.  Plaintiff's complaint alleges that her performance was broadcast on the "City

Beat Entertainment Magazine via Public Access Comcast Cable Channel 12."  (Compl. ¶ 1).

Channel 12 is a PEG channel.  (Def. Mem., Ex. 1 ¶ 6).

Plaintiff does not contest that Comcast is prohibited by the Cable Act from regulating the

content of programming broadcast through PEG channels, nor does she contest that it exempts

them from any potential liability for the content.  (Pl. Mem. at 2).  Rather, she argues:  (1) that

"this provision constitutes a gross violation of [her] United States Constitutional Rights under

Article 1, section 8; clause 8, which grants protection of copyright . . . " (*Id.*); and (2) that

Comcast's PEG Access Operating Procedures prohibit the broadcast of material that violates copyright.[4]

Neither of these assertions provides a basis for piercing Comcast's immunity from liability. Article I, Section 8, Clause 8 of the Constitution, known as the Copyright Clause, confers a grant of power to Congress to make laws regarding copyright; it does not grant an individual right to plaintiff. The PEG Access Operating Procedures provide guidelines for producers and sponsors of programming that airs on PEG access channels; it does not negate Congress's grant of immunity to cable operators, and it does not create a cause of action by plaintiff against Comcast.

Accordingly, Comcast is immune from civil suit involving the content of programming on its PEG channel.

## 2. **Comcast's Blanket License Agreement with ASCAP**

Comcast also contends that it is immune from liability because the broadcast of plaintiff's performance is covered by its blanket license agreement with ASCAP.

ASCAP is an unincorporated membership association and performing rights organization. *In re Application of MobiTv, Inc*, 712 F. Supp. 2d 206, 211 (S.D.N.Y. 2010). It has hundreds of thousands of members and a repertory containing nearly 10 million copyrighted musical works. *Id.* ASCAP members grant ASCAP the non-exclusive right to license public performances of their music. *Id.* ASCAP then licenses the entertainers' public performing rights to broadcasters, hotels, restaurants, nightclubs, and similar establishments. *EMI April Music,*

---

[4] Plaintiff also inserts a claim that Comcast has breached her "Right to Publicity under Massachusetts General Law - MGLA § 214 s 3A." Because this claim was not presented in the complaint, the Court will not address it.

*Inc., v. Caparell's Inc.*, 1995 U.S. Dist. LEXIS 10119, at *7 (N.D. Ind. March 17, 1995).

A blanket license agreement is one that gives a music user the right to perform all of the works in the repertory of a performing rights organization such as ASCAP as often as they like. *In re Application of MobiTv, Inc*, 712 F. Supp. 2d at 211. When such an agreement is in place, the licensee pays an annual fee to ASCAP; ASCAP then distributes the collected royalties to its members based on the frequency with which their songs have been performed. *Id.* A user that holds a blanket license agreement with ASCAP is not required to seek permission from any individual ASCAP member for the use or performance of that member's music.

Comcast and ASCAP entered into a blanket license agreement covering the term from January 1, 2007, to December 1, 2011. The license provides:

> ASCAP grants to Licensee and Licensee accepts, for the License Period, a non-exclusive, Through-to-the-Audience, license to perform in and as part of Licensed Programming over each of Licensee's Distribution Systems within the United States, nondramatic public performances of musical compositions now or hereafter during the term hereof in the ASCAP repertory, or as to which ASCAP has or shall have the right to grant such license during the term hereof.

(Def. Mem., Ex. 2).

"Through-to-the-Audience" is defined as the "transmission or retransmission of simultaneous or so-called 'delayed' performances of music . . . ." (Def. Mem., Ex. 2). "Licensed programming" refers to Comcast's television programming, including PEG programming. (*Id.*) ("Licensed Programming as used in this Agreement shall mean . . .  (b) programming on public, educational, and governmental . . . access channels."). "Licensee's Distribution Systems" means all cable television distribution systems that Comcast operates. (*Id.*).

There is no dispute that plaintiff is a member of ASCAP, and that her music is thus part

of the ASCAP repertory.  (Compl. ¶ 1).  Nor is there any dispute that the license agreement was in effect at the time of the broadcast at issue in this case.  Rather, plaintiff asserts that the blanket license agreement between Comcast and ASCAP is not relevant to this case.  Plaintiff does not, however, present any factual or legal argument to support this contention.   The simple assertion that the agreement does not apply is not a sufficient showing to establish the existence of a genuine dispute as to that fact.

The blanket license agreement clearly provides Comcast with the right to broadcast any music that is part of the ASCAP repertory, including plaintiff's.  Accordingly, Comcast is a valid licensee of plaintiff's copyright, and cannot be liable for copyright infringement.

### 3.    <u>Wrongdoing by Comcast</u>

Defendant also contends that it is entitled to summary judgment because plaintiff has not pleaded any actual wrongdoing by Comcast.  Because defendant is immune from liability under both statute and contract, the Court need not address this argument.

### C.    <u>Plaintiff's Motion for Summary Judgment</u>

Plaintiff has cross-moved for summary judgment against both defendants.  Plaintiff contends that summary judgment is appropriate because defendants Bass and Comcast "acted collaboratively" to broadcast her performance without permission, despite ample opportunity to request permission.  (Pl. Mem. at 8).[5]  She further contends that their failure to obtain permission was willful, because several weeks passed between the recording and the broadcast, during which time they could have requested permission.  (*Id*.).  As to defendant Comcast,

---

[5] Plaintiff's memorandum begins with page number 2.  For convenience and to avoid confusion, the Court will cite to the page numbers as they are set forth in plaintiff's memorandum.

plaintiff contends that the Cable Act violates her constitutional rights, and that the blanket license agreement is irrelevant.

For the reasons set forth above, plaintiff's motion for summary judgment against Comcast will be denied.

As to plaintiff's motion for summary judgment against Bass, the Court must determine whether there is any genuine dispute as to any material fact. For purposes of this motion, the Court will view the record in the light most favorable to Bass. All reasonable inferences will also be drawn in his favor.

The evidence currently before the Court indicates that there is a genuine dispute as to at least two issues of material fact, and that accordingly plaintiff is not entitled to judgment as a matter of law. First, plaintiff bears the burden of establishing ownership of a valid copyright. Although she has alleged ownership of copyrights for all three songs, she has not presented evidence establishing ownership of the compositions at issue. If plaintiff is able to come forward with certificates of registration for her songs, the burden will shift to defendant to cast doubt on the validity of her copyrights. Until she does so, however, the burden remains hers, and there remains a genuine issue as to the ownership of a valid copyright. Second, there is a dispute as to whether defendant's recording of plaintiff's performance and the subsequent broadcast were authorized. Defendant contends that plaintiff knew he was recording the showcase, knew he was a producer for a television show, and asked him for a copy of the recording. A reasonable factfinder could find that plaintiff's actions were sufficient to grant defendant an implied license to record and broadcast her performance, and thus provide a valid defense to copyright infringement. Accordingly, the disputed facts regarding plaintiff's communications with

defendant Bass are material to the outcome of this case.

There are almost certainly additional disputed facts at issue in the suit. However, because the presence of a single genuine dispute on a material question of fact is sufficient to defeat a motion for summary judgment, the Court need not explore these additional facts here. Plaintiff has failed to demonstrate that she is entitled to judgment as a matter of law. Accordingly, her cross-motion for summary judgment will be denied.

## IV.   <u>Conclusion</u>

For the foregoing reasons, defendant Bass's motion for judgment on the pleadings is DENIED, defendant Comcast's motion for summary judgment is GRANTED, and plaintiff's motion for summary judgment is DENIED.

**So Ordered.**

 /s/ F. Dennis Saylor_____
F. Dennis Saylor IV
United States District Judge

Dated:  November 20, 2012